# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| CALEB KNUTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Jury Trial Demanded Herein |
| EXPERIAN INFORMATION SOLUTIONS, INC., | ) | |
| TRANS UNION, LLC, and | ) | |
| CENTRAL BANK OF BOONE COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW Plaintiff Caleb Knuth, by and through undersigned counsel, and for his Complaint against the Defendants, Experian Information Solutions, Inc., Trans Union, LLC, and Central Bank of Boone County, he states and avers as follows:

## INTRODUCTION

1.     This is an action for actual, statutory and punitive damages brought by Plaintiff against Defendant for the willful, knowing, and/or negligent violation of, *inter alia*, Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 *et seq.*, known as the *Fair Credit Reporting Act* ("FCRA") which relates to the proper dissemination and use of consumer credit and other financial information.

## PARTIES

2.     Caleb Knuth ("Plaintiff") is a natural person that resides in Fenton, Missouri.

3.     Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. § 1681a(c).

4.      Experian is a foreign corporation that regularly transacts business in the state of Missouri through its registered agent, The Corporation Company, 120 South Central Avenue, Clayton, Missouri 63105.

5.      Experian Information Solutions, Inc. ("Experian") is a national consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

6.      Trans Union, LLC ("Trans Union") is foreign limited liability company that regularly transacts business in Missouri through its registered agent, The Prentice-Hall Corporation, 221 Bolivar Street, Jefferson City, Missouri 65101.

7.      Trans Union, LLC is a national consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

8.      Central Bank of Boone County ("Central Bank") is for-profit bank located in the state of Missouri.

9.      Central Bank maintains a principal office located at 720 East Broadway, Columbia, Missouri 65205.

10.     Central Bank is a furnisher of information as contemplated by the FCRA, 15 U.S.C. § 1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681*p*.

12.     Venue in this District is proper because Plaintiff resides in this District, Defendants transact business in this District, and the conduct complained of occurred in this District.

## BACKGROUND AND FACTUAL ALLEGATIONS

2

13.    Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

14.    In September 2017, Plaintiff financed a vehicle purchase with an auto loan though Central Bank.

15.    Unfortunately, like many Americans, Plaintiff suffered financial difficulties during this time and eventually the vehicle was repossessed and sold at auction.

16.    By 2020, Plaintiff had recovered financially and began to rebuild his finances.

17.    Plaintiff hoped he had improved his financial situation to the extent necessary to qualify for a mortgage loan so he could pursue his dream - to purchase a home.

18.    After applying with a mortgage lender, Plaintiff was informed that he was not eligible for financing because his credit scores were two low.

19.    Plaintiff was crushed.  He understood that he struggled with some of his accounts in the past, but he had worked hard to repair his finances, was employed in a solid job, and believed he should be eligible for a loan.

20.    He obtained a copy of his credit reports to try and identify why his scores were too low to qualify.

21.    Plaintiff noticed that the auto loan from Central Bank was listed as a significant derogatory account on his credit report.  Worse still, the loan was appearing on his credit reports twice, once with Central Bank, and again through a collection agency, GFS, Inc, with balances listed as past due on both listings.

22.    This was inaccurately reflecting that two different accounts of Plaintiff's went delinquent and that he owed twice as much outstanding debt.  This was having an unfairly negative impact on his credit scores and was anchoring them below the eligibility threshold for mortgage financing.

23.     On or about June 4, 2020, Plaintiff contacted Trans Union and Experian by letter to dispute the duplicate reporting of the balance on the Central Bank auto loan.

24.     Pursuant to 15 U.S.C. § 1681i(a)(2) of the FCRA, Trans Union and Experian were then required to reasonably investigate Plaintiff's disputes, as well as forward a copy of Plaintiff's dispute letter to Central Bank.

25.     Confusingly, Plaintiff did not receive any response.

26.     Plaintiff was discouraged and dismayed.   He was already embarrassed at letting this account get past due in the first place.  Why was Central Bank compounding the damage by duplicating the account balance?  Why were Experian and Trans Union allowing this to happen? Why wouldn't they remove the inaccurate duplicate balance information and ensure his credit report was complete and accurate as required?

27.     Determined to get this problem fixed, Plaintiff sent additional letters to Experian and Trans Union on or about July 10, 2020, August 27, 2020, and October 2, 2020.

28.     However, he has yet to receive a response from Experian or Trans Union  - or see anything changed on his credit report.

29.     Upon information and belief, Central Bank is receiving notice of Plaintiff's dispute letter from Experian and Trans Union and is incorrectly responding by "verifying" the accuracy of its credit reporting.

30.     Plaintiff is at a loss as to how to follow – let alone combat – Experian, Trans Union and Central Bank's logic in continuing to report the balance in two separate tradelines.

31.     After contacting Experian, Trans Union and Central Bank repeatedly to fix this issue without success, Plaintiff fears that he will not be able to obtain an accurate credit report and will continue to lose out on credit opportunities, including his opportunity to own a home.

32.     Plaintiff remains ineligible for mortgage financing and has lost all trust in the credit reporting system.

## FIRST CLAIM FOR RELIEF

### Negligent and Willful Violations of 15 US.C. § 1681i(a) and e(b) by Experian

33.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

34.     A "consumer reporting agency" is defined by the FCRA as follows:

35.     [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.  15 U.S.C. § 1681a(f).

36.     Experian is a "consumer reporting agency" as defined by the FCRA.

37.     Section 1681n of the FCRA imposes civil liability on any entity "who willfully fails to comply with any requirement" of the Act.  *See* 15 U.S.C. § 1681n(a).

38.     Section 1681o of the FCRA provides for civil liability against any entity that is negligent in failing to comply with any requirement imposed under the Act.

39.     The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681i(a)(1).  The Act imposes a 30-day time limitation for the completing of such an investigation.  *Id.*

40.     The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed

information, the CRA is required to delete that item of information from the consumer's file.  *See* 15 U.S.C. § 1681*i*(a)(5)(A).

41.     If information is deleted from a consumer's file following a dispute, "the information may not be reinserted in the file" unless the CRA certifies that the information is complete and accurate and, even then, the CRA "shall notify the consumer of the reinsertion in writing not later than 5 business days after the reinsertion[.]" *See* 15 U.S.C. § 1681*i*(a)(5)(B).

### Experian's Reasonable Reinvestigation Violations

42.     By letters dated June 4, 2020, July 10, 2020, August 27, 2020 and October 2, 2020, Plaintiff disputed the Central Bank account on his Experian credit report.

43.     Plaintiff specifically advised Experian that a mistake had been made, provided all necessary information to Experian to support same, and requested the trade line be updated accordingly.

44.     Either Experian conducted no investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow objectively false and highly damaging information to remain in Plaintiff's credit file.

45.     By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Experian willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1).

46.     As a direct and proximate result of Experian's repeated disregard for each of Plaintiff's disputes, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

47.     As a direct and proximate result of Experian's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-

pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

48.    Upon information and belief, Experian has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

49.    Experian's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.  The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

### Failure To Follow Reasonable Procedures
### To Assure Maximum Possible Accuracy

50.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).

51.    On numerous occasions, Experian has prepared a patently false consumer report concerning Plaintiff.

52.    Despite actual and implied knowledge that the Central Bank account balance was being reported twice, Experian readily sold inaccurate reports to one or more third parties without regard to the accuracy or inaccuracy of what Experian reported.

53.     On each such instance, Experian willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681e(b).

54.     Through Plaintiff's communications with Experian, Experian knew, or had sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it was circulating was inaccurate and damaging to Plaintiff.  Nevertheless, Experian took no measure to stop painting a false and damaging picture about Plaintiff.

55.     Plaintiff has suffered out-of-pocket loss as a result of Experian's willful and/or negligent violations of the FCRA including, without limitation, the premiums Plaintiff must spend for a credit monitoring service – a credit monitoring service that, ironically, further lined Experian's pockets.

56.     As a direct and proximate result of Experian's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

57.     Upon information and belief, Experian has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

58.     Experian's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.  The injuries suffered by Plaintiff are attended by

circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in his favor and against Experian, and for the following relief:

(a)     Actual damages sustained;

(b)     Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c)     Punitive damages in an amount to be determined by the jury;

(d)     Reasonable attorneys' fees and costs; and

(e)     Any other and/or further relief as deemed appropriate and just by this Honorable Court.


## SECOND CLAIM FOR RELIEF

### Negligent and Willful Violations of 15 US.C. § 1681i(a) and e(b) by Trans Union, LLC

59.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

### Trans Union's Reasonable Reinvestigation Violations

60.     By letters dated June 4, 2020, July 10, 2020, August 27, 2020 and October 2, 2020, Plaintiff disputed the Central Bank account on his Trans Union credit report.

61.     Plaintiff specifically advised Trans Union that a mistake had been made, provided all necessary information to Trans Union to support same, and requested the trade line be updated accordingly.

62.     Either Trans Union conducted no investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow objectively false and highly damaging information to remain in Plaintiff's credit file.

63.     By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Trans Union willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1).

64.     As a direct and proximate result of Trans Union's repeated disregard for each of Plaintiff's disputes, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

65.     As a direct and proximate result of Trans Union's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

66.     Upon information and belief, Trans Union has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

67.     Trans Union's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.  The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for

statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

## Failure To Follow Reasonable Procedures
## To Assure Maximum Possible Accuracy

68.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).

69.     On numerous occasions, Trans Union has prepared a patently false consumer report concerning Plaintiff.

70.     Despite actual and implied knowledge that the Central Bank account balance was being reported twice, Trans Union readily sold inaccurate reports to one or more third parties without regard to the accuracy or inaccuracy of what Trans Union reported.

71.     On each such instance, Trans Union willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681e(b).

72.     Through Plaintiff's communications with Trans Union, Trans Union knew, or had sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it was circulating was inaccurate and damaging to Plaintiff.  Nevertheless, Trans Union took no measure to stop painting a false and damaging picture about Plaintiff.

73.     Plaintiff has suffered out-of-pocket loss as a result of Trans Union's willful and/or negligent violations of the FCRA including, without limitation, the premiums Plaintiff must spend for a credit monitoring service – a credit monitoring service that, ironically, further lined Trans Union's pockets.

74.     As a direct and proximate result of Trans Union's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

75.     Upon information and belief, Trans Union has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

76.     Trans Union's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.  The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in his favor and against Trans Union, and for the following relief:

(f)     Actual damages sustained;

(g)     Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(h)     Punitive damages in an amount to be determined by the jury;

(i)     Reasonable attorneys' fees and costs; and

(j)     Any other and/or further relief as deemed appropriate and just by this Honorable Court.

### THIRD CLAIM FOR RELIEF

**Negligent and Willful Violations of 15 U.S.C. § 1681s-*2* by CENTRAL BANK**

77.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

78.     Central Bank is a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

79.     Furnishers of credit information have duties under the FCRA, specifically 15 U.S.C. § 1681s-2(b)(1), to investigate disputes initiated from consumers to CRAs as to the accuracy of information reported about them by the furnisher.

80.     On at least four (4) occasions, namely June 4, 2020, July 10, 2020, August 27, 2020 and October 2, 2020, Plaintiff contacted Experian and Trans Union specifically to dispute the accuracy of the accounts relating to Central Bank reported about him.

81.     Plaintiff specifically advised Experian and Trans Union on each occasion that the information being reported was inaccurate and misleading and requested the information be deleted or updated accordingly.

82.     Upon information and belief, and pursuant to 15 U.S.C. § 1681i(a)(2), Central Bank received notification of these disputes from Experian and Trans Union.

83.     Nevertheless, the inaccurate Central Bank account information was allowed to remain on Plaintiff's credit report under the guise that Central Bank had "verified" the information as true.

84.     Either Central Bank conducted no real investigation of Plaintiff's disputes, or such "investigations" were so information known to be inaccurate and misleading to remain in Plaintiff's credit file.

85.     By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Central Bank negligently and/or willfully violated § 1681s-2(b)(1) of the FCRA.

86.     As a direct and proximate result of Central Bank's willful and/or negligent refusal to comply with the FCRA as described herein, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of creditworthiness, loss of credit opportunity, damage to reputation, expenditure of significant time, energy and out-of-pocket costs, considerable distress, mental anguish, worry, frustration, fear and embarrassment, entitling Plaintiff to an award of actual damages as determined by the jury, plus attorneys' fees and the costs of this action, pursuant to 15 U.S.C. § 1681o.

87.     Central Bank's complete and utter indifference as to its obligations under the FCRA reveals a conscious disregard of the rights of Plaintiff, and the injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of punitive damages against Central Bank, pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in his favor and against Central Bank, and for the following relief:

(a)     Actual damages sustained;

(b)     Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c)     Punitive damages in an amount to be determined by the jury;

(d)     Reasonable attorneys' fees and costs; and

(e)     Any other and/or further relief as deemed appropriate and just by this Honorable Court.

### <u>JURY DEMAND</u>

Plaintiff respectfully demands a jury trial on all issues so triable.

Respectfully submitted,


**By: s/Andrew M. Esselman**
Andrew M. Esselman #64837
Credit Law Center, LLC
4041 NE Lakewood Way, Suite 140
Lee's Summit, MO 64064
T: (816) 246-7800
F: (855) 523-6884
andrewe@creditlawcenter.com
Attorney for Plaintiff